IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32839-2-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOSHUA JAMES CLARK, | ) | OPINION PUBLISHED |
| | ) | IN PART |
| Appellant. | ) | |

KORSMO, J. — Joshua Clark claims a right to have his unchallenged legal financial

obligations (LFOs) considered initially on appeal pursuant to RAP 2.5(a)(2). We reject

that argument and, in the unpublished portion of this case, also reject his CrR 3.3 challenge

to his convictions for attempting to elude and possession of a controlled substance.

## FACTS

This action is a companion to *State v. Clark*, 191 Wn. App. 369, 362 P.3d 309

(2016) (published in part) (*Clark* I). As with this case, the issues presented on appeal in

*Clark I* involved an LFO challenge and a time for trial claim. The *Clark I* trial and

sentencing occurred after the trial and sentencing in this case. *Id.* at 371, 376. We noted

that scant attention was paid to LFOs at the sentencing in *Clark I* as the parties focused on the question of concurrent or consecutive sentencing. *Id.* at 376.

The focus of this sentencing hearing was on the State's request for an exceptional sentence on the attempting to elude charge. The jury had returned a special verdict that others had been endangered by Mr. Clark's driving, resulting in a 12 month enhancement to the base sentence. The State's sentencing memorandum urged an exceptional sentence on the basis of the defendant's 24 unscored misdemeanor convictions. It also detailed the financial costs and fines it was seeking. The prosecutor reiterated at sentencing most of the costs and fines he was seeking.

Defense counsel then addressed the court on the financial matters and alerted the judge that his client had been assaulted in the jail and would have additional medical costs beyond the $95.41 mentioned in the State's briefing; he suggested the State might need to set an additional hearing concerning the pending additional medical costs. Counsel agreed that the $95.41 was currently owing for medical costs and then urged the court to impose a midrange sentence within the enhanced range resulting from the special verdict. Mr. Clark apologized for his behavior and asked for a treatment-based sentence if possible. The trial court imposed a 30 month sentence at the top of the enhanced sentence range rather than imposing an exceptional sentence. The court's oral remarks did not mention LFOs, but the judgment and sentence form imposed a total of $2,145.41 in costs and fines, including the $95.41 sought for medical expense reimbursement. The

2

judgment and sentence form also contained pre-printed language indicating that the court had considered the defendant's "future ability to pay legal financial obligations, including the defendant's financial resources." Clerk's Papers at 46.

Mr. Clark timely appealed to this court. A panel considered the case without argument.

## ANALYSIS

Mr. Clark asserts a right to have his LFO argument heard in this court as well as urging that we exercise our discretion to consider his claim. After first characterizing one of the LFOs imposed by the trial court, we ultimately conclude that RAP 2.5(a)(2) does not support Mr. Clark's argument and decline to exercise discretion to consider his claim.

As noted in *Clark I*, numerous appeals in recent years have addressed the imposition of LFOs without the record reflecting that the trial court first had undertaken its RCW 10.01.160(3) obligation to consider the offender's ability to pay those costs. 191 Wn. App. at 372-73. The statutory obligation only extends to the decision to impose costs other than those mandated by the legislature. *Id.* at 373. Costs that are required by statute are not subject to this obligation. Among the mandatory costs are restitution, the crime victim assessment, the DNA collection fee, and the criminal case filing fee. *Id.* Most other costs, including witness costs, collection costs, and recoupment of the cost of trial counsel, are discretionary. *Id.* at 374. *Clark I* also determined that fines authorized by RCW 9A.20.021 are not "costs" subject to the statutory inquiry. *Id.* at 374-76.

Because the alleged error at issue in the LFO cases was the failure to comply with a statutory requirement, and in nearly all cases there was no objection in the trial court, the preliminary question was whether the belated challenge could even be raised on appeal in light of Washington's policy of not entertaining arguments that had not been presented to the trial court. RAP 2.5(a). All three divisions of this court concluded that they could not be considered. *Clark I*, 191 Wn. App. at 373. Subsequently, the Washington Supreme Court ruled the issue was not one that could be raised as a matter of right and that the appellate courts had discretion to review or decline to review the issue. *State v. Blazina*, 182 Wn.2d 827, 830, 344 P.3d 680 (2015).

With this backdrop, we consider Mr. Clark's latest LFO challenge. Initially, however, we need to resolve a preliminary question of how to characterize one of the financial obligations imposed by the court. There were $800 in mandatory costs (filing fee, crime victim assessment, DNA fee) and a $500 fine, thus placing $1,300 of the assessments beyond reach of the statutory inquiry. Another $495.41 (attorney fee recoupment, medical cost reimbursement) was assessed for clearly discretionary costs. It is unclear to us whether the $250 jury demand fee is a mandatory or discretionary cost.[1]

---

[1] *Compare* RCW 10.01.160(2), which indicates in relevant part that the jury fee "under RCW 10.46.190 may be included in costs the court may require a defendant to pay" *with* RCW 10.46.190, stating that "every person convicted . . . shall be liable to all the costs . . . including . . . a jury fee . . . for which judgment shall be rendered and collected." *See also State v. Diaz-Farias*, 191 Wn. App. 512, 524, 362 P.3d 322 (2015) (concluding jury demand fee could be imposed per RCW 10.01.160(2)) and *State v. Munoz-Rivera*, 190 Wn.

4

As the parties do not directly address that fee in their briefing, we will assume for

purposes of this opinion that it is a discretionary cost. The remaining assessment is the

$100 crime laboratory fee.

RCW 43.43.690(1) provides:

When a person has been adjudged guilty of violating any criminal statute of this state and a crime laboratory analysis was performed by a state crime laboratory, in addition to any other disposition, penalty, or fine imposed, the court *shall levy a crime laboratory analysis fee* of one hundred dollars for each offense for which the person was convicted. *Upon a verified petition by the person assessed the fee, the court may suspend payment* of all or part of the fee if it finds that the person does not have the ability to pay the fee.

(emphasis added). The proceeds from this assessment are forwarded to the general fund

and are to be used only for the crime laboratories. RCW 43.43.690(3).

This assessment is mandatory if a laboratory analysis was conducted. Upon

conviction, the court "shall levy" the fee. Only on a "verified petition" by the offender

may the court suspend some or all of the fee if it determines there is no ability to pay.

Unlike discretionary costs, the laboratory fee is assessed and, then, perhaps, revised if the

defendant provides adequate proof. In contrast, the process is reversed under RCW

10.01.160(3). Under that provision, discretionary costs may only be imposed if the court

has first determined ability to pay.

---

App. 870, 894, 361 P.3d 182 (2015) (defendant considered jury demand fee as mandatory cost).

The crime laboratory fee is mandated by statute. Accordingly, $1,400 of the LFOs assessed against Mr. Clark are not subject to initial challenge on appeal, while only $745 is subject to our discretionary decision whether or not to review the argument.

Mr. Clark, however, argues that RAP 2.5(a)(2) provides a vehicle to mandate that we consider his challenges to the discretionary LFOs. That provision provides that "a party may raise the following claimed errors for the first time in the appellate court: . . . (2) failure to establish facts upon which relief can be granted." This has long been the rule in Washington. *See O'Toole v. Faulkner*, 29 Wash. 544, 548, 70 P. 58 (1902) (failure to state a claim for relief could be raised for first time in the supreme court per statute). The current text was considered to more accurately reflect modern practice than the former "failure to state a claim" language. *See* RAP 2.5 cmt. a at 86 Wn.2d 1152 (1976).

Traditionally, this provision simply has been the basis for considering initially on appeal a challenge to the prevailing party's evidence due to failure to establish some element of its case. Thus, in *Roberson v. Perez*, 156 Wn.2d 33, 39-40, 123 P.3d 844 (2005), a tort judgment for negligent investigation was reversed on appeal because the plaintiff had not been the subject of a police investigation nor to a harmful placement decision. Similarly, a claim of unlawful age discrimination failed under RAP 2.5(a)(2) when the defense pointed out on appeal that the plaintiff was too young to bring a claim under the statute. *Gross v. City of Lynnwood*, 90 Wn.2d 395, 400, 583 P.2d 1197 (1978). *Accord, In re Adoption of T.A.W.*, 188 Wn. App. 799, 808, 354 P.2d 46 (2015) (failure to

6

prove compliance with Indian Child Welfare Act considered initially on appeal). RAP 2.5(a)(2) has not been applied in cases where the facts were unclear or agreed by the parties in the trial court. *E.g., Mukilteo Ret. Apts., L.L.C. v. Mukilteo Investors L.P.*, 176 Wn. App. 244, 310 P.3d 814 (2013) (party who agreed at trial contract was valid could not use RAP 2.5(a)(2) to argue lack of proof of element on appeal); *Cole v. Harveyland, L.L.C.*, 163 Wn. App. 199, 258 P.3d 70 (2011) (unclear facts and uncertain burden of proof).

However, this rule also has been cited as the basis for addressing other issues on appeal that had not been argued to the trial court. For instance, Division Two of this court used the rule to dismiss a case where the appellant failed to establish her standing to contest an adoption. *Mitchell v. Doe*, 41 Wn. App. 846, 848, 706 P.2d 1100 (1985). The rule also has been cited as the basis for considering on appeal a statute and a local court rule that were not cited to the trial court. *Stedman v. Cooper*, 172 Wn. App. 9, 24, 292 P.3d 764 (2012) (change in statute wrought by intervening supreme court decision was dispositive on whether appellant had proved her entitlement to fees under the statute); *Batten v. Abrams*, 28 Wn. App. 737, 742, 626 P.2d 984 (1981) (parties failed to comply with mandatory local court rule, leaving trial court unable to impose discovery sanctions).

With particular emphasis on *Stedman*, Mr. Clark argues that insufficient facts support the trial court's determination that he has the ability to pay his LFOs, thus leaving the trial court without statutory authority to impose them. Brief of Appellant at 7-8.

While creative, this expansion of the rule's meaning is unjustified and distorts the purpose of the provision.

In each of the noted instances where RAP 2.5(a)(2) was applied, the "fact" in question was one that went to an element of the case such as the age of the complainant alleging age discrimination or the failure to comply with the Indian Child Welfare Act in the adoption of a native American child. *Gross*, 90 Wn.2d at 400; *T.A.W*, 188 Wn. App. at 799. Even where the argument was rejected, the "fact" in question still went to an element of the cause of action. For instance, in *Cole* the fact in question was the number of employees working for the defendant, a statutory element of an exemption from the plaintiff's employment law claim. 163 Wn. App. at 205-12. In each of these instances, the "fact" was one essential to the survival of the cause of action.[2] The *Mitchell* ruling on standing similarly involved a "fact" essential to the ability to maintain the action—the appellant's ability to challenge the adoption. 41 Wn. App. at 846.

The case factually most supportive of Mr. Clark's position is *Batten*. Properly read, however, *Batten* is consistent with the other authorities. There the respondents had failed to confer with the appellant's attorney, as required under the local court rules,

---

[2] *Stedman* is consistent with this reading, but is best understood as a retroactivity case. The law changed while the case was on appeal, scrambling the "elements" of the cause of action by revising what could be considered in determining which party prevailed at a trial de novo following an arbitration award. The effect of the change in law was to leave the respondent with insufficient evidence to support part of the damages element of her case, a classic RAP 2.5(a)(2) concern. 172 Wn. App. at 24-25.

before noting their motion for discovery sanctions. 28 Wn. App. at 742. Citing to *Gross*, this court concluded that RAP 2.5(a)(2) allowed appellant to raise the non-compliance argument despite failing to object in the trial court. *Id.* We viewed the rule as the cause of action for pursuing the discovery sanctions and concluded that respondents had failed to prove a critical fact necessary for their recovery. *Id.* at 742-43.

In contrast, the "fact" at issue here—whether the trial court complied with its statutory obligation before imposing the discretionary LFO component of the sentence—did not touch on the elements of the State's cause of action for attempting to elude and possessing a controlled substance. It addressed a procedural question concerning the trial court's statutory sentencing obligations. This situation is not a concern of RAP 2.5(a)(2).[3]

---

[3] Our reading is consistent with that in *Mukilteo*. There, Division One of this court stated that the rule was "limited to circumstances wherein the proof of particular facts at trial is required to sustain a claim." 176 Wn. App. at 246. At issue on appeal was the validity of the option contract, a fact that typically is an element of a breach of contract case. *Mukilteo* described its test in terms of whether relief could be granted in the absence of the challenged fact. *Id.* Although appellant had admitted in the pre-trial pleadings that the contract was a valid agreement, on appeal it tried to argue that respondents had not established the validity of the contract at trial. That concession rendered proof at trial of the contract's validity unnecessary. *Id.* at 254-55, 259. While the pleadings may have eliminated that factual issue from the trial, the fact otherwise seems to fail the *Mukilteo* test because it normally would be necessary to establish the contract's validity in order to obtain relief. We believe *Mukilteo* is better read as a case of the appellant waiving the proof requirement and, therefore, being unable to assert a right to review under RAP 2.5(a)(2).

9

Here, the trial court's compliance with RCW 10.01.160(3) was not a component of the State's cause of action. Instead, it involved a procedural error that "is unique to these defendants' circumstances." *Blazina*, 182 Wn.2d at 834. It was for that very reason that the appellate courts are permitted, but not required, to consider an LFO issue on appeal. *Id.* The statutory right of the defendant to individualized LFO sentencing simply is not a requirement of the cause of action against the defendant. It is an independent obligation of the trial court.

RAP 2.5(a)(2) should not be read to permit a party as a matter of right to challenge on appeal each and every action that he did not challenge at trial. It should be read, as it was intended to be read, as applying solely to insufficient proof of an essential element of a party's case. That description does not apply to the trial court's actions, including its unchallenged failure to conduct an individualized inquiry on ability to pay discretionary LFOs in this case. RAP 2.5(a)(2) does not mandate that we consider Mr. Clark's belatedly raised LFO challenge.

We likewise decline to exercise our discretion to consider his challenge under these circumstances. His trial counsel spoke to, and did not contest, the discretionary costs relating to Mr. Clark's medical bills. He had the opportunity to address the other LFOs and chose not speak to them. Instead, he successfully focused his argument against the requested exceptional sentence. The LFOs were not a significant concern.

The judgment and sentence is affirmed.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder having no precedential value shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

Mr. Clark also argues that his CrR 3.3 time for trial rights were violated when his case was continued to a date along with another case of his that was set on the same day. As with his claim in the previous appeal, this argument fails on multiple grounds.

The facts relevant to this argument can be simply stated. Mr. Clark was arraigned on these charges and subsequently failed to appear for a hearing, leading to the issuance of an arrest warrant in both this case and in an unrelated, and separately charged, burglary case. He was brought back before the court on June 16, 2014 and maintained in custody on both files. Trial was then set on both matters for July 24, 2014, with the time for trial period expiring August 15, 2014. At the July 21 trial readiness calendar, the court was in the midst of a murder trial involving a different defendant. The parties requested that the July 24 trial dates be maintained in the event the murder trial was resolved by then, but also asked to be heard on new trial dates the following Monday, July 28, in the event the murder trial did not conclude.

The murder trial did not resolve itself early, so the parties were back before the court on July 28 to set new trial dates for Mr. Clark's cases. Trial on both files was rescheduled to August 14, 2014, an action that his counsel characterized as "necessary,"

11

and both matters were set for trial readiness hearings on August 11. At the August 11

readiness hearing, the prosecutor indicated he preferred to take the burglary case to trial on

the 14th. Defense counsel agreed and the trial judge set this case over to August 28, 2014.

Mr. Clark personally objected to the continuance of this case, even though his

attorney agreed to the continuance. The trial judge explained that there was but one

judge and one courtroom, so only one of Mr. Clark's cases could be tried on the 14th and

one would have to be continued. The burglary case went to trial on August 14 and this

case on August 28.[4]

> We stated the basic principles of CrR 3.3 in *Clark I*:
>
> > In its most basic terms, CrR 3.3 requires trial within 60 days of arraignment if the defendant is held in custody on the pending charge(s) or 90 days if the defendant is not in custody on the pending charge. CrR 3.3(b), (c)(1). The same time periods apply if a new commencement date is required for any of several reasons listed in CrR 3.3(c)(2).
> >
> > A timely written objection to a trial date scheduled outside the requirements of the rule must be brought to the court's attention by motion or the defendant loses the opportunity to object. CrR 3.3(d). Various factors also act to exclude time from the 60- or 90-day trial period, including proceedings on unrelated charges and continuances. CrR 3.3(e)(2), (3). Whenever any period of time is excluded, there is a 30-day minimum period of time within which to bring a case to trial. CrR 3.3(b)(5). Finally, even if the trial period passes without trial, a five day cure period may be invoked. CrR 3.3(g).
>
> *Clark*, slip op. (unpublished portion) at 10.

---

[4] Nothing in our record indicates the result of that trial. However, neither the judgment and sentence in this case nor in *Clark I* references any 2014 convictions relating to that charge.

No. 32839-2-III
*State v. Clark*

While we need not discuss the matter exhaustively, there are several reasons this CrR 3.3 challenge fails. First, our record shows no written objection, let alone a motion to reset the trial within the perceived time for trial period. Thus, the challenge was waived. CrR 3.3(d). Second, Mr. Clark was unavailable for trial on this case since he was in trial on his burglary charge on August 14, 2014. This period of time was properly excluded from the time for trial in this case. CrR 3.3(e)(2). Third, the unavailability of the defendant (and the judge, prosecutor, defense counsel, and the courtroom) also was a proper basis for a continuance, leading to this time period being excluded from the time for trial period pursuant to CrR 3.3(e)(3) and CrR 3.3(f). *State v. Flinn*, 154 Wn.2d 193, 200, 110 P.3d 748 (2005) (recognizing scheduling conflict as valid reason for continuing case beyond time for trial period). Fourth, even if the continuance to August 28 had not been justified, the "necessary" continuance to August 14 itself created a 30 day buffer period to get the case to trial, making the August 28 trial also timely. CrR 3.3(b)(5). For at least all of these reasons, there was no violation of CrR 3.3.

The convictions are affirmed.

Korsmo, J.

I CONCUR:

Siddoway, J.

13

PENNELL, J. (dissenting in part) — I join all but the last substantive paragraph of the majority's published opinion, through which the court declines discretionary review of Mr. Clark's legal financial obligation (LFO) claims.

Trial courts have an affirmative obligation to inquire into a defendant's financial circumstances before imposing discretionary LFOs. RCW 10.01.160(3). This is not a trivial burden. It cannot be satisfied merely by signing off on a boilerplate form, indicating that the defendant has the present or future ability to pay. *State v. Blazina*, 182 Wn.2d 827, 838, 344 P.3d 680 (2015). Instead, the trial court must consider each defendant's personal situation and individually analyze his or her financial prospects, including outstanding debts, obligations, and earning capacity. *Id.*

The trial judge undoubtedly failed to meet this statutorily-mandated duty. No individualized inquiry took place. There was no discussion on the record of Mr. Clark's financial obligations or what he might be able to do for a living after release from prison. In fact, the trial judge made no mention of LFOs during the entire sentencing proceeding. It was not until after the sentencing hearing, when the trial court entered a written judgment and sentence, that Mr. Clark was informed he had been assessed $2,145.41 in mandatory and discretionary LFOs.

Despite the trial court's clear error, the majority declines Mr. Clark's request for relief because his attorney did not object. I would not deny review on this technicality. Our Supreme Court has made clear we have authority to review discretionary LFO

decisions even when no objection was raised in the trial court. *Id.* at 835. In cases where defendants have had the fortune of receiving discretionary Supreme Court review, the court has consistently—and without limitation—remanded unpreserved LFO arguments for resentencing under *Blazina*. *See State v. Duncan*, 185 Wn.2d 430, 374 P.3d 83 (2016) (citing cases); *see also State v. Austin*, 185 Wn.2d 1025, __ P.3d __ (2016) (reversing discretionary denial of LFO claim and remanding under *Blazina*); *State v. Como*, 185 Wn.2d 1025, __ P.3d __ (2016) (same); *State v. Floyd*, 185 Wn.2d 1025, __ P.3d __ (2016) (same); *State v. Matheny*, 185 Wn.2d 1026, __ P.3d __ (2016) (same); *State v. Wilmer*, 185 Wn.2d 1025, __ P.3d __ (2016) (same).[1] Mr. Clark should be afforded equal consideration.

Based on the foregoing, I dissent from the majority opinion in part and would remand this case to the superior court for reconsideration of discretionary LFOs consistent with the requirements set forth in *Blazina*.

_____
Pennell, J.

---

[1] Mr. Clark recently had a separate appeal before this court wherein he unsuccessfully raised an unpreserved LFO argument. *State v. Clark*, 191 Wn. App. 369, 362 P.3d 309 (2015). It appears he did not seek discretionary review of that decision as a mandate was issued on January 5, 2016.